Petition for NATURALIZATION of
Samuel Johannes BRAKEL.

Petition No. 458520.

United States District Court,
N. D. Illinois, E. D.

Nov. 13, 1979.

Samuel J. Brakel, pro se.

Thomas L. Pullen, Gen. Atty., Nationality, Immigration and Naturalization Service, Chicago, Ill., for Immigration and Naturalization Service.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

Samuel Johannes Brakel is a thirty-five year old citizen of the Netherlands who has resided in this country since 1962. He has petitioned for citizenship, and it is this petition which is currently pending before the court.

After conducting a preliminary examination, the designated naturalization examiner concluded, on the basis of the facts presented, that the petitioner be denied naturalization on the ground that he is "unable" to take the required oath of allegiance. The findings of fact are set forth in detail in the examiner's report. Petitioner takes no issue with these findings, but disagrees with the examiner's conclusions and the final recommendation. By stipulation, it has been agreed that the matter be submitted to this court on the record as it now stands.

After considering the briefs filed by both parties, the court concludes that the petitioner is not entitled to naturalization without in good faith taking the required oath rather than the modified oath suggested by petitioner. My reasons follow:

Section 337(a) of the Immigration and Nationality Act, 8 U.S.C. § 1448(a), provides that:

"A person who has petitioned for naturalization shall, in order to be and before being admitted to citizenship, take in open court an oath . . . (5)(A) to bear arms on behalf of the United States when required by the law, or (B) to perform noncombatant service in the Armed Forces of the United States when required by the law, or (C) to perform work of national importance under civilian direction when required by the law . . . [A] person who shows by clear and convincing evidence to the satisfaction of the naturalization court that he is opposed to any type of service in the Armed Forces of the United States by reason of religious training and belief shall be required to take an oath containing the substance of clauses (1) to (4) and (5)(C). . . ."

Mr. Brakel has stated that, out of a sense of moral conviction, he would have been unable to serve either directly or indirectly in support of this country's military involvement in Vietnam. He does not claim that he would object to military service under all circumstances, but he does recognize that

"the logical conclusions of my objection to the Vietnam War extend to other situations too." Mr. Brakel states that he would not object to performing "work of national importance" under any circumstances. Thus, he is essentially seeking to swear a modified oath in order that he might be free to follow the dictates of his conscience in determining the circumstances and scope of his military obligation. Assuming without deciding that Mr. Brakel's ethical convictions rise to the level of "Oppos[ition] ... by reason of religious training and belief," cf. In re Weitzman, 426 F.2d 439 (8th Cir. 1970), this court is nonetheless, bound to conclude that selective conscientious objection of the sort asserted by petitioner does not justify his use of the modified oath.

Prior to the 1952 restructuring of the naturalization laws, the oath of citizenship merely required a petitioner to swear that he would "support and defend the constitution and laws of the United States of America against all enemies foreign and domestic," quoted in Girouard v. United States, 328 U.S. 61, 62, 66 S.Ct. 826, 90 L.Ed. 1084 (1946). This pledge was initially taken to include a promise of military service, U.S. v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889 (1929). Moreover, it was initially held that this promise was not excusable where a petitioner made a showing of selective conscientious objection similar to the showing made here, United States v. Mac-Intosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302 (1931). Fifteen years after they came down, these decisions were overruled (on strictly statutory grounds) in Girouard v. United States, supra. It was a desire to undo the work of Girouard which led the Congress, in 1952, to change the oath to its present form:

"Prior to the decision of the Supreme Court in the case of Girouard v. United States in 1946 (328 U.S. 61, 66 S.Ct. 826, 90 L.Ed. 1084) it was held that the oath of allegiance required as a prerequisite to naturalization that the petitioner promise to bear arms in defense of the United States. The Girouard decision, in effect, changed the accepted meaning of the oath so as to exclude the promise to bear arms in defense of the United States. The bill is designed to place the naturalized citizen in the same position as the native-born citizen by requiring the naturalized citizen to promise to bear arms on behalf of the United States when required by law, or to perform non-combatant service in the Armed Forces of the United States when required by law, or to perform work of national importance under civilian direction when required by law." Committee on the Judiciary, House Rep. No. 1365, 2 U.S.Code Congressional and Administrative News at 1653, 1741 (82d Cong. 2d Sess. 1952).

The clear intent of Congress in enacting these provisions was to impose as a precondition for naturalization the requirement that the petitioner state his or her willingness to serve this country in precisely the same ways as those who were subject to the Selective Service Laws. House Report No. 1365, supra; see also Conference Report, House No. 2096, 2 U.S. Code Congressional and Administrative News, at 1756 (82d Cong. 2d Sess. 1952). Thus, the meaning of the oath, and the conditions under which a petitioner would be permitted to modify it for reasons of conscience, were meant to track the then extant Selective Service standards, id. Since the Supreme Court has squarely held that selective claims of conscience did not suffice to excuse military service under the old draft, Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971), they do not excuse the pledge of such service which is required from all naturalized citizens.

Nor is the court dissuaded from this conclusion by the fact that the selective service apparatus is no longer intact. The oath of renunciation and allegiance was never understood as amounting simply to a promise that the future citizen would obey the selective service laws. Rather, it appears to have been taken as a statement of the depth of the new citizen's commitment to this country. Thus, for example, although the Selective Service Act was never applied to females, the provisions of the oath dealing with military service were routinely ad-

ministered to male and female petitioners alike, *e. g., In re Weitzman, supra.* Additionally, if Congress had thought of the pledge to bear arms as being required solely by the existence of the legal obligations formerly imposed on all citizens by the draft, it could have amended the naturalization laws to reflect the draft's demise. Congress' failure to do so is hardly dispositive of this issue, but it is, at least, consistent with this court's holding.

In sum, petitioner is not entitled to satisfy the oath requirement by adherence to the modified oath of 8 U.S.C. § 1448(a)(5)(C). Rather, he must in good faith swear to "bear arms on behalf of the United States when required by law" in conformity with the language of 8 U.S.C. § 1448(a)(5)(A).

For the reasons stated, the petition for naturalization must be, and it is hereby, denied.